OPINION
{¶ 1} Defendant-appellant Andre Grant appeals from his conviction and sentence for Possession of Criminal Tools and Complicity to Possess Marijuana. Grant contends that the trial court erred by denying his motion to suppress evidence and by sentencing him to more than the minimum possible sentence. Grant further contends that he was denied the effective assistance of trial counsel, and that his conviction is not supported by the evidence.
 {¶ 2} We conclude that the trial court did not err by denying Grant's motion for suppression of evidence. We also conclude that Grant's claims that his trial counsel was ineffective and that the evidence does not support his conviction are not supported by the record. Finally, we agree that the trial court erred in sentencing. Accordingly, Grant's convictions for Possession of Criminal Tools and Complicity to Possess Marijuana are Affirmed, but his sentence is Reversed, and this cause is Remanded for resentencing in accordance with State v. Foster,109 Ohio St. 3d 1, 2006-Ohio-856.
 1. I {¶ 3} Following complaints of drug activity at 617 Edison Street in Dayton, the Dayton Police Department initiated a controlled buy of illegal drugs via a confidential informant. After a successful buy, a search warrant was obtained for the residence. Prior to executing the warrant, the police were given information about a gray car near the residence. The police were concerned that the person inside the vehicle was acting as a lookout for the people inside the residence.
 {¶ 4} While executing the warrant on the residence, a couple of the officers approached a gray vehicle situated "so as to have a clear view of 617 Edison." The sole occupant of the vehicle was Grant, who had a "small walkie-talkie in his hand" and a small television in the car. The officers noticed the smell of "burned marijuana" emanating from the vehicle. Grant was removed from the car and patted down. A search revealed no contraband on Grant's person or in the car. However, the walkie-talkie was removed from the car and taken into evidence.
 {¶ 5} Grant was indicted on one count of Possession of Criminal Tools and one count of Complicity to Possess Marijuana. Following a bench trial, Grant was found guilty as charged. He was sentenced to ten months for Possession of Criminal Tools and two years for Complicity to Possess Marijuana, with the terms of imprisonment to be served concurrently. From his conviction and sentence, Grant appeals.
 1. II {¶ 6} Grant's First Assignment of Error is as follows:
 {¶ 7} "THE TRIAL COURT ERRED, ABUSED ITS DISCRETION AND VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS WHEN IT ADMITTED EVIDENCE RETRIEVED FROM INSIDE THE VEHICLE AS THE VEHICLE WAS NOT ON THE SEARCH WARRANT AND NO ONE CONSENTED TO AUTHORIZE THE SEARCH OF THE VEHICLE."
 {¶ 8} Grant contends that the trial court erred by denying his motion to suppress the evidence obtained during the search of the gray vehicle. In support, he argues that the police did not have authority to search the vehicle because the search warrant did not include the vehicle and because he did not consent to a search.
 {¶ 9} The standard of review with respect to a motion to suppress requires that an appellate court accept the findings of the trial court so long as those findings are supported by competent and credible evidence. State v. Lander (Nov. 24, 1999), Montgomery App. No. 17635, citing State v. Retherford (1994), 93 Ohio App.3d 586, 592. "However, the appellate court reviews application of the law to the facts de novo." Id.
 {¶ 10} At the suppression hearing Dayton Police Officer David House testified that he had been out to the residence at 617 Edison on two occasions during the course of investigating complaints of drug activity. He testified that on the date the warrant was executed, the team "observed a gray color Dodge Stratus which was parked directly across the street from 617 Edison and also observed there was an individual sitting in the passenger side of this vehicle." House further testified that the team had previously seen the car during the investigation and that there was concern that the person in the car was acting as a lookout for the persons selling narcotics in the residence.
 {¶ 11} Officer Bell testified that he was part of the team sent to execute the warrant at the Edison residence. He testified that his team had information that a gray car in the area might be acting as a lookout for the people inside the residence. He testified that he was assigned the duty of making contact with the occupant of the car while other officers executed the warrant on the residence. Bell testified that as he approached the vehicle, he observed Grant in the passenger seat with a walkie-talkie in his hand. Bell also observed a small television in the driver's seat. Bell testified that as he approached the car, Grant was opening the door to the vehicle. When Bell got to the car, he also began to open the door and told Grant to exit the car and to "show his hands." Bell testified that when the door was opened, he detected a "strong odor of marijuana." Bell testified that he was familiar with the smell of marijuana having come into contact with it "many times" in his tenure as a police officer. Bell and his partner then secured Grant and patted him down. Grant was placed under arrest at the scene.
 {¶ 12} The trial court specifically stated that Bell's testimony was credible and that given the totality of the circumstances, Bell had a reasonable, articulable basis to investigate the car. The trial court further found that the smell of marijuana provided the officer with probable cause to suspect that Grant was involved in criminal activity.
 {¶ 13} We also note that the walkie-talkie and television taken from the car had been observed by Officer Bell as he approached the car. Thus, the items taken were in plain view. We conclude that the trial court did not err in determining that Bell, based upon the information provided to the police and garnered from their surveillance, had a reasonable, articulable suspicion that Grant was involved in criminal activity. We further conclude that the trial court did not err in finding that Bell had probable cause to detain Grant after observing him with a walkie-talkie and smelling marijuana. We further conclude that the items admitted into evidence against Grant — the television and the walkie-talkie — were in plain view of Officer Bell and thus, Grant's objections to the seizure of those items lacks merit.
 {¶ 14} The First Assignment of Error is overruled.
 6 1. III {¶ 15} The Second Assignment of Error is as follows:
 {¶ 16} "THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS AND FAILED TO COMPLY WITH THE OHIO FELONY SENTENCING GUIDELINES WHEN IT A PRISON SENTENCE [SIC], AND MORE THAN THE MINIMUM, ON APPELLANT'S FIRST CRIMINAL OFFENSE."
 {¶ 17} Grant contends that the trial court erred in sentencing. Specifically, he asserts that the trial court erred by imposing a prison sentence and by making that sentence more than the minimum possible.
 {¶ 18} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held that parts of Ohio's felony sentencing scheme are unconstitutional, including R.C. 2929.14(B), which required judicial factfinding before imposition of more-than-minimum sentences. Id., at paragraph one of the syllabus. Because Foster held the statute under which Grant's sentence was imposed to be unconstitutional and severed it from the rest of the sentencing provisions of the Revised Code, we must reverse his sentence and remand this cause for a new sentencing hearing.Foster, at If 104-105. The Second Assignment of Error is sustained.
 1. IV {¶ 19} Grant asserts the following for his Third Assignment of Error:
 {¶ 20} "THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 21} Grant contends that his trial counsel did not provide effective representation. Specifically, he claims that trial counsel was ineffective for having waived his right to trial by jury; for having failed to raise the claim that his sentence was disparate when compared to the sentences imposed upon his co-defendants or that the trial court erred by sentencing him to more than the minimum sentence; and for having failed to argue evidence regarding fingerprints.
 {¶ 22} In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516, 524.
 {¶ 23} Even if counsel's performance is shown to have been deficient, the defendant must still show that the deficient performance had an effect on the judgment. State v. Bradley (1989), 42 Ohio St.3d 136, 142. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 24} We begin with the claims that counsel was ineffective for having failed to raise arguments regarding any defects in Grant's sentence, and note that those issues have been rendered moot by our disposition of the Second Assignment of Error, in Part III, above.
 {¶ 25} Next, Grant claims that the "items in the car appeared to have been dusted for fingerprints," and that the record does not contain any evidence regarding the results of that testing. Thus, he contends that trial counsel was deficient for having failed to "raise any issue regarding the missing fingerprinting evidence."
 {¶ 26} From our review of the record, we cannot say whether the television or walkie-talkie were dusted for fingerprints. Thus, we cannot say that trial counsel was ineffective for having failed to raise such an argument.
 {¶ 27} Finally, Grant contends that trial counsel fell below the standard of reasonableness by having failed to request a jury trial. In support, he claims that "it would certainly appear from the sentencing hearing that the sins of the other Defendants were strongly held against Mr. Grant." He further argues that "his counsel should not have let his case be judged by the trial judge alone with her being influenced by facts with regard to the other defendants."
 {¶ 28} We have reviewed this record and find no evidence that the trial court was improperly biased against Grant or that the trial court punished him because of the behavior of his co-conspirators. As we have previously stated, "[w]hether to try a case to the bench or to a jury is matter of trial strategy. Even debatable trial tactics do not establish the ineffective assistance of counsel." Dayton v. Turic, Montgomery App. 20149, 2005-Ohio-131, ¶ 14. "Moreover, we can only speculate as to whether [Grant] would have been more favorably received by a jury." Id. To the extent that Grant alleges that support for this claim exists outside the record, we note that he is restricted to the petition for post-conviction relief which he says he has filed in the trial court.
 {¶ 29} The Third Assignment of Error is overruled.
 1. V {¶ 30} Grant's Fourth Assignment of Error is as follows:
 {¶ 31} "THE VERDICT WAS BASED UPON INSUFFICIENT EVIDENCE AND/OR CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 32} Grant contends that his conviction is not supported by the evidence, and is against the manifest weight of the evidence.
 {¶ 33} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 34} In contrast, when reviewing a judgment under a manifest weight standard of review, "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." Thompkins, supra, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 35} In order to be convicted of Complicity, an aider and abettor must share the criminal intent of the principal. R.C. 2923.03. The offense of Possession of Marijuana is proscribed by R.C. 2925.11(A) which states that "no person shall knowingly obtain, possess, or use a controlled substance." "Knowingly" is defined by R.C. 2901.22(B) which states that "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 36} R.C. 2923.24(A) provides that "no person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 37} Grant's claim that the State failed to produce evidence sufficient to support his conviction for Complicity to Possess Marijuana is based upon his argument that he was not in possession of any drugs, that he was never seen in the residence where the marijuana was located, and that he was never seen during any of the surveillance prior to the execution of the warrant. Likewise, he argues that the State did not present evidence sufficient to support the conviction for Possession of Criminal Tools because there was no evidence showing that he operated the walkie-talkie and because he did not, in actuality, have possession of the walkie-talkie.
 {¶ 38} We disagree. The evidence demonstrates that Grant was in a parked vehicle watching a small travel television while his wife's uncle was inside the residence.[1] The vehicle was parked so as to have full and clear view of the residence. The police had previously observed a vehicle similarly parked that was being used as a post for a lookout. The police also observed the vehicle on the date the warrant was executed. According to the testimony of Officer Bell, he observed Grant in the car with a walkie talkie in his hand. The evidence showed that the walkie talkie in Grant's possession matched a walkie talkie inside the residence and that Grant's walkie talkie was compatible with the charging units inside the residence. The vehicle smelled of burned marijuana — a fact acknowledged by Grant. Inside the residence, the police found over two thousand grams of marijuana, guns, cocaine and cash in excess of six thousand dollars.
 {¶ 39} Based upon these facts, we conclude that the trial court could reasonably find that Grant had in his possession a walkie talkie matching the walkie talkie and charger found in the drug house, and that the purpose of the walkie talkie was to warn the individuals inside the drug house. We further conclude that the trial court could reasonably find that Grant was acting as a lookout for the persons inside the drug house. The evidence also leads to the inference that Grant was aware of the marijuana inside the house, and that he was therefore complicit in the possession thereof.
 {¶ 40} We further conclude that the judgment of the trial court is not against the manifest weight of the evidence. The inferences that Grant was acting as a lookout in furtherance of a criminal enterprise, knew that marijuana was unlawfully possessed in the house, and was using the walkie talkie as a tool in his capacity as a lookout are all reasonable inferences.
 {¶ 41} The Fourth Assignment of Error is overruled.
 1. VI {¶ 42} Grant's First, Third and Fourth assignments of error having been overruled, his convictions for Complicity to Possess Marijuana and Possession of Criminal Tools are Affirmed. His Second Assignment of Error having been sustained, the sentence is Reversed, and this cause is Remanded for resentencing in accordance with State v. Foster, supra.
GRADY, P.J., and BROGAN, J. concur.
[1] The uncle was charged with, and subsequently convicted of, Possession of Marijuana and Possession of Criminal Tools.